UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CANOPIUS US INSURANCE, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. _____ |
| | § | |
| TEXAS  METAL  SCRAP  RECYCLERS, | § | |
| LLC | § | |
| | § | |
| Defendant. | § | |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES, Plaintiff, Canopius US Insurance, Inc. ("Canopius"), and files this Original Complaint for Declaratory Judgment, and in support thereof would respectfully show the following:

## I.      INTRODUCTION

1.      Canopius brings this action seeking a declaratory judgment that it has no obligation to provide coverage under Policy Number OUS009066697 ("Policy") for any damages that allegedly occurred on the property of Technip USA, Inc. ("Technip") located at 8000 Global Drive, Sulphur, Louisiana, as a result of a personal injury to Leo Boudoin, Jr. ("Boudoin"). In particular, coverage does not exist under the Policy because (1) the named defendants do not qualify as insureds under the Policy; (2) the alleged business conduct of the insured, Texas Metal Scrap Recyclers, LLC ("TMSR"), falls outside of the Policy's business description and classification; and (3) the Policy does not provide coverage for bodily injury arising out of, caused by or contributed to by the use of an auto. As a result, coverage is precluded under the Policy, and Canopius owes no duty to defend or indemnify TMSR in the underlying lawsuit.

## II.      PARTIES

2.      Canopius US Insurance, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1450 East American Lane, Schaumburg, Illinois 60173.

3.      Texas Metal Scrap Recyclers, LLC claims to be a Texas limited liability company. Its principal place of business is located at 6318 Gessner Dr., Houston, Texas 77041 and may be served through its registered agent, James Craig Dudley, at the above address or any other place that he may be found. Service of process is requested at this time.

## III.      JURISDICTION AND VENUE

4.      The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and this is an action between citizens of different states. Thus, diversity jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1).

5.      Venue is proper under 28 U.S.C. § 1391(b)(1) in this judicial district because all Defendants reside in this judicial district and are residents of the State of Texas.

6.      This declaratory judgment action is properly before the Court pursuant to 28 U.S.C. § 2201(a) because it involves a policy issued in this judicial district, is otherwise within the Court's subject-matter jurisdiction and involves an actual, substantial case or controversy between the Parties.

## IV.    RELEVANT FACTS

### A.    The Underlying Lawsuit

7.    On or about February 26, 2015, the underlying plaintiff, Boudoin, was working for Arthur Woods ("Woods") d/b/a Simco Solutions ("Simco") at a commercial facility owned by Technip. As alleged by Boudoin, Simco owned and operated a "commercial motor vehicle, license plate CDM-9296, with a crane attached to the bed of the truck." Boudoin's Original Petition, attached hereto as Exhibit "A", at ¶ 10. Boudoin was employed as a mechanic/burner, with his job duties being to maintain mechanical equipment and cut scrap metal. *See id.* at ¶ 8.

8.    At the time of the accident, Woods was operating the crane attached to the back of the truck to unload pipe. He allegedly picked up a heavy pipe section and was lowering it to the ground when it fell off the grapple hook attached to the crane. As a result, a 30 foot section of pipe lying on the ground was struck, causing same to move suddenly and strike Boudoin in his lower right leg. Boudoin allegedly sustained serious injuries and subsequently filed suit against Jamyky, LLC d/b/a Texas Metal Scrap Recyclers and Arthur Woods d/b/a Simco Solutions (the "underlying lawsuit"). The insured, TMSR, thereafter made a claim, received on July 15, 2015, for defense and indemnity under the Policy. *See* Notice of Occurrence, attached hereto as Exhibit "B".

### B.    Canopius' Insurance Policy and Coverage Position to Date

9.    Policy Number OUS009066697 was issued in Texas to "Texas Metal Scrap Recyclers, LLC" with a policy period of June 30, 2014 to June 30, 2015. The Policy provided TMSR with Commercial General Liability Coverage, subject to Policy provisions.

3

10.     Blair & Company is a Third Party Administrator for Canopius. On August 18, 2015, Blair & Company sent a Denial of Coverage, attached hereto as Exhibit "C", to TMSR. The denial letter advised TMSR that the Policy would not provide it with defense or indemnity for the allegations in the underlying suit for three main reasons: (1) the defendants in the underlying lawsuit do not qualify as insureds under the Policy; (2) the alleged business conduct of TMSR falls outside the scope of the Policy's business description and classification; and (3) the Policy does not provide coverage for bodily injury arising out of, caused by or contributed to by the use of an auto.

**a.     The Defendants in the Underlying Lawsuit Are Not Insureds under the Policy.**

11.     The only entity listed in the Policy Declarations is "Texas Metal Scrap Recyclers, LLC". The Supplemental Declarations under the Policy's Form of Business further notes that TMSR is a limited liability company.

12.     The Policy provides, under Section II – Who Is An Insured, in relevant part, as follows:

**SECTION II – WHO IS AN INSURED**

**1.  If you are designated in the Declarations as:**

**. . .**

> **c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.**

**. . .**

**No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.**

13.     The above provision extends insured status to members of the limited liability company, but only with respect to the conduct of the business. Insured status is also extended to any manager of the limited liability company, but only with respect to their duties as managers.

14.     The Policy contains no endorsements modifying the name of TMSR or adding insureds to same. Moreover, TMSR did not list any other entities in its application. Rather, the application is in the name of "Texas Metal Scrap Recyclers, LLC." But as noted in the Policy, no person or organization is an insured with respect to conduct of any partnership, joint venture or limited liability company not listed as a Named Insured in the Declarations. Therefore, only Texas Metal Scrap Recyclers, LLC, its members and directors qualify as insureds under the Policy.

15.     In the underlying petition, Boudoin asserts that Texas Metal Scrap Recyclers is a d/b/a of Jamyky, LLC. Jamyky, LLC is pled to be a d/b/a and, accordingly, does not qualify as a member of Texas Metal Scrap Recyclers, LLC. Moreover, no filing has been made for Texas Metal Scrap Recyclers, LLC with the Texas Secretary of State. Without the necessary paper work to be a legally recognized LLC, TMSR can have no members. As such, Jamyky, LLC does not qualify as an insured under the aforementioned member provision. For the same reason, Jamyky, LLC likewise cannot be a manager of Texas Metal Scrap Recyclers, LLC. Jamyky does not qualify as an insured under the manager provision.  For these reasons, Jamyky, LLC is not an insured under the Policy and will have no coverage available to same.

16.     Similarly, Simco Solutions does not qualify as a member of Texas Metal Scrap Recyclers, LLC or as a manager of Texas Metal Scrap Recyclers, LLC. Therefore, Simco Solutions is also not an insured under the Policy.

17.     Arthur Woods likewise does not appear to be a member of Texas Metal Scrap Recyclers, LLC, nor does he appear to be a manager of same. Regardless, the underlying petition asserts Arthur Woods was operating as Simco Solutions and thus would not be working in the capacity of either member or manager of Texas Metal Scrap Recyclers, LLC during the events that allegedly caused the underlying injury. Therefore, Arthur Woods does not qualify as an insured under the Policy.

18.     Boudoin also asserts in the underlying petition that Simco Solutions and Arthur Woods were acting as agents of TMSR. However, agency does not rise to the level of membership or manager status in a limited liability company. As a result, these allegations do not trigger insured status for either Simco Solutions or Arthur Woods under the Policy.

19.     Lastly, paragraph 3 of Section II – Who Is An Insured regarding newly formed organizations is deleted via endorsement Exclusions – New Entities. Therefore, no argument can be made that either Jamyky, LLC or Simco Solutions is a newly formed organization of Texas Metal Scrap Recyclers, LLC. The only entity that is an insured under the Policy is Texas Metal Scrap Recyclers, LLC.

**b.     The Alleged Business Conduct of TMSR Falls Outside the Scope of the Policy's Business Description and Classification.**

20.     The next applicable provision of the Policy is TMSR's classification, which is "Metal Scrap Dealers." The subject class code description is as follows:

**This classification is applicable to both ferrous and non-ferrous recyclable scrap metals such as iron, steel, brass, copper and**

> **aluminum. The dealer sorts and grades various metals for resale to others. Operations may involve shearing, cutting or reduction of metals to ingot form through the use of on site furnaces.**
>
> **Metal scrap dealers usually purchase metals from junk dealers or contractors engaged in demolition of existing structures or metal buildings. Recyclable metals may be bundled or baled for shipment to blast furnace operators, foundries or steel mills for recovery. Delivery can be made by common carrier or employee drivers.**

This class description does not reference the actual collection and cutting of metal from the facility of another. The description also does not reference the use of mobile cranes to move the subject material. On the contrary, the description states that "[m]etal scrap dealers usually purchase metal from junk dealers or contractors engaged in demolition of existing structures or metal buildings." *Id*. The underlying defendants have gone beyond the contemplated role of a metal scrap dealer and are operating outside of the class description.

21.    The description also does not say that the insured, with a metal scrap dealer classification, will be actually performing the demolition of existing structures or metal material at another's facility. The underlying petition, however, states Boudoin was employed as a mechanic/burner whose job it was to maintain mechanical equipment and cut scrap metal. The petition also states Boudoin was working at the Technip facility and that the operation in which he was injured involved moving several heavy pieces of pipe by crane. The pled activities are simply not associated with the activities contemplated in the class code description for metal scrap dealers. Furthermore, Boudoin alleges the failure of Simco, as an agent of TMSR, to perform the subject operations not described in the class are what caused or contributed to his injuries in the underlying suit.

22.    As a result of Boudoin's allegations in the underlying petition not falling within the class of business for which TMSR is described in the Policy, the Policy's Classification Limitation is triggered. The Classification Limitation, which is found in the Combination General Liability Endorsement, reads as follows:

(A)    **Classification Limitation**

**This insurance applies only to locations and operations that are described under "business description" and/or "classification" on the Declaration page or Extension of Declarations page of this policy. If any operation(s) and/or location(s) are not so described, they are not covered hereunder.**

23.    The limitation provides the Policy will apply only to operations described under the "business description" and/or classified on the Declaration page or Extension of Declarations page of the Policy.

24.    The provision also states that if any operations are not so described, they are not covered by the Policy. The "business description" can be found on the Supplemental Declarations page under "Description of Business" and reads as follows: "METAL SCRAP DEALERS." Further, on the Extension of Supplemental Declarations of the Policy, the class description is likewise "METAL SCRAP DEALERS." Therefore, TMSR's business is described as metal scrap dealers, and TMSR is classified as a metal scrap dealer. As noted above, the conduct described in the underlying petition does not fall under either the description or the classification of metal scrap dealers. Therefore, the operations asserted in the underlying petition are not "described" in the Policy, and the Policy will thus not cover the bodily injury that resulted from same. Canopius has no duty to defend and no duty to indemnify.

c.    **The Policy Does Not Provide Coverage for Bodily Injury Arising out of, Caused by, or Contributed to by the Use of an Auto.**

25.     The next applicable provision of the Policy is the Aircraft, Auto or Water Craft Exclusion ("auto exclusion"). The auto exclusion, found in the Commercial General Liability Coverage Form, is modified by the Combination General Liability Endorsement and provides as follows:

**(E)     Aircraft, Auto or Watercraft**

**The first paragraph of SECTION I COVERAGES, 2. Exclusions, g. Aircraft, Auto or Watercraft of the Commercial General Liability Coverage Form is deleted and replaced by the following and applies throughout this policy:**

**This insurance does not apply to: g. "bodily injury" or "property damage" arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any aircraft, "auto", watercraft, snow mobile, all terrain vehicle (ATV) or motorcycle. Use includes operation and "loading and unloading."**

**This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or water-craft that is owned or operated by or rented or loaned to any insured.**

**This exclusion does not apply to:**

**. . .**

**(5)     "Bodily injury" or "property damage" arising out of:**

**(a)     The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or**

> > **(b)** **the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment."**

26.     The auto exclusion applies to negate bodily injury arising out of, caused by or contributed to by the use of an auto, including loading and unloading operations.

27.     The Policy defines "auto" as follows:

> **2.     "Auto" means:**
>
> > **a.     A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or**
> >
> > **b.     Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.**
>
> **However, "auto" does not include "mobile equipment."**

28.     The Policy defines "mobile equipment" as follows:

> **12.     "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:**
>
> **. . .**
>
> > **d.     Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:**
> >
> > > **(1)     Power cranes, shovels, loaders, diggers or drills; or**
> > >
> > > **(2)     Road construction or resurfacing equipment such as graders, scrapers or rollers;**
>
> **. . .**
>
> **However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.**

10

**Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."**

29.     The auto exclusion applies if the Simco truck used in the subject incident of the underlying suit qualifies as an "auto" and not as "mobile equipment." Moreover, the definition of "auto" is triggered to the extent the Simco truck is subject to compulsory or financial responsibility laws in the State of Texas.

30.     At first glance, the definition of "mobile equipment" appears to apply to the Simco truck at issue. In particular, the definition of "mobile equipment" provides that a vehicle with a permanently mounted power crane may qualify as mobile equipment to the extent the vehicle is maintained primarily to provide mobility to that crane. However, given that the Simco truck is driven on public highways and is used for purposes other than as mobility for the subject crane, this provision does not apply.

31.     Furthermore, the exception to the "mobile equipment" definition noted above is also triggered. This exception provides that "mobile equipment" does not include any vehicle subject to compulsory or financial responsibility laws, and the Simco truck at issue is indeed subject to those laws in the State of Texas, where the truck is principally garaged. The truck's records confirm that it is licensed in Texas and required to have automobile insurance. Therefore, the Simco truck is considered an "auto" rather than "mobile equipment."

32.     Because the Simco truck is an "auto" under the Policy, the next consideration is the application of the auto exclusion. The exclusion states the Policy will not apply to a bodily injury arising out of the use of an auto, specifically including loading and unloading.

33.     In his original petition, Boudoin states he was injured while Simco, allegedly acting as the agent of TMSR, was unloading heavy pipe from the Simco truck. Therefore, the underlying petition asserts he sustained a bodily injury arising out of the use of an auto. As a result, the auto exclusion is triggered, and the Policy does not apply.

34.     Additionally, the underlying petition asserts six acts of negligence, all of which involve the failure of Simco, allegedly acting as the agent of TMSR, to properly operate the auto. Again, the auto exclusion is triggered by these allegations, and the Policy therefore does not apply.

> **d.     Coverage Is Also Not Available Under Coverage C – Medical Payments, Which Does Not Apply to Bodily Injury Excluded Under Coverage A.**

35.     Finally, the Policy provides, under Coverage C – Medical Payments, for payment of medical expenses up to a $5,000.00 limit. However, Coverage C also contains exclusion g., "Coverage A Exclusions," which states Coverage C will not apply to any bodily injury excluded under Coverage A.

36.     As stated above, the auto exclusion, found in Coverage A negates Boudoin's bodily injury in the underlying suit from coverage. Therefore, the bodily injury is also excluded under Coverage C via exclusion g. Similarly, the Classification Limitation negates the application of the Policy to Boudoin's bodily injury and, therefore, Coverage C cannot apply.

37.     For these reasons, (1) the Policy does not provide coverage to TMSR in the underlying suit, and (2) Canopius has no duty to defend or to indemnify TMSR in the underlying suit.

## V.     COUNT I – DECLARATORY JUDGMENT

**Texas Law Is Controlling on the Issues of Coverage Involved in This Action.**

38.     Canopius incorporates each and every allegation in paragraphs 1 through 37 of this Complaint.

39.     The Policy was negotiated and issued in Texas to an insured, TMSR, with its principal place of business in Houston, Texas. This contract for insurance is thus a Texas contract and should therefore be interpreted according to the laws of the State of Texas.   Accordingly, Canopius seeks a declaration from the Court that Texas law is controlling on the issues of coverage made the basis of this action.

## VI.     COUNT II – DECLARATORY JUDGMENT

**The Defendants in the Underlying Lawsuit Are Not Insureds under the Policy.**

40.     Canopius incorporates each and every allegation in paragraphs 1 through 39 of this Complaint.

41.     The only entity listed in the Policy Declarations is "Texas Metal Scrap Recyclers, LLC," a limited liability company. The Policy also extends insured status to members of TMSR with respect to the conduct of the business and to managers of TMSR with respect to their duties as managers. Because the Policy does not include any other person or organization as a Named Insured in the Declarations, only Texas Metal Scrap Recyclers, LLC, its members and directors may qualify as insureds under the Policy. However, the defendants in the underlying lawsuit are neither members nor managers of Texas Metal Scrap Recyclers, LLC, nor were they conducting TMSR's business or acting with respect to duties of a TMSR manager. Furthermore, the allegations that the defendants were acting as agents of TMSR does not rise to the level of member or manager of a limited liability company and also does not confer insured status. Finally, none of the defendants in the underlying lawsuit can be said to be newly

formed organizations of TMSR because paragraph 3 of Section II – Who Is An Insured regarding newly formed organizations has been deleted via an endorsement. Accordingly, Canopius seeks a declaration from the Court that the defendants in the underlying lawsuit are not insureds under the Policy.

## VII.   COUNT III – DECLARATORY JUDGMENT

**The Alleged Business Conduct of TMSR Falls Outside the Scope of the Policy's Business Description and Classification.**

42.   Canopius incorporates each and every allegation in paragraphs 1 through 41 of this Complaint.

43.   The Policy includes a job description and classification of "metal scrap dealer" for TMSR. However, the alleged activities in the underlying petition extend beyond the scope of this contemplated description and classification. In particular, the actual collection and cutting of metal at the facilities of others, the use of mobile cranes to move materials, and the demolition of existing structures or metal material are not activities contemplated within the defined term of "metal scrap dealer." As a result, the Policy's Classification Limitation is applicable and coverage does not exist for the underlying lawsuit. Accordingly, Canopius seeks a declaration from the Court that the alleged operations of TMSR fall outside the scope of the Policy's business description and classification, thereby triggering the Policy's Classification Limitation that states the Policy will not cover TMSR's subject operations.

## VIII.   COUNT IV – DECLARATORY JUDGMENT

**The Policy Does Not Provide Coverage for Bodily Injury Arising out of, Caused by, or Contributed to by the Use of an Auto**

44.   Canopius incorporates each and every allegation in paragraphs 1 through 43 of this Complaint.

45.     The accident made the basis of the underlying lawsuit arises out of a personal injury that occurred after a heavy pipe section fell to the ground from a grapple hook attached to a crane. This crane, however, was mounted upon the bed of a truck and was being used at the time of the incident to pick up the heavy pipe section that ultimately caused Boudoin, the underlying plaintiff, to be struck. In other words, the underlying lawsuit arises out of a bodily injury that arose out of the use of an "auto" (defined to include any attached machinery or equipment). Indeed the subject motor vehicle has a registered Texas license plate and is required to have automobile insurance. As such, the vehicle constitutes an "auto" rather than "mobile equipment," and the underlying allegations thus trigger the Policy's auto exclusion, which specifically excludes coverage under the Policy for bodily injury arising out of the use of an auto. Accordingly, Canopius seeks a declaration from the Court that, pursuant to the Policy's auto exclusion, there is no coverage with respect to the bodily injury made the basis of the underlying suit.

## IX.     COUNT V – DECLARATORY JUDGMENT

**Coverage Is Also Not Available Under Coverage C – Medical Payments, Which Does Not Apply to Bodily Injury Excluded Under Coverage A**

46.     Canopius incorporates each and every allegation in paragraphs 1 through 45 of this Complaint.

47.     For the reasons set forth above, particularly in Counts III and IV, there is no coverage for the underlying lawsuit under Coverage A of the Policy. The Policy also provides Coverage C – Medical Payments, which affords the payment of medical expenses up to a $5,000.00 limit. However, because coverage does not exist under Coverage A, exclusion g of Coverage C is triggered. In particular, exclusion g

("Coverage A Exclusions") states that Coverage C does not apply to any bodily injury excluded under Coverage A. Accordingly, Canopius seeks a declaration from the Court that, pursuant to exclusion g. within Coverage C, the Policy does not provide coverage for the underlying suit.

## IX.    PRAYER

WHEREFORE, Plaintiff, Canopius US Insurance, Inc., seeks the following relief against Texas Metal Scrap Recyclers, LLC:

(1)    On Count I, a declaration and judgment that Texas law is controlling on the issues of coverage made the basis of this action.

(2)    On Count II, a declaration and judgment that the defendants in the underlying lawsuit are not insureds under Policy Number OUS009066697, and that, therefore, (a) no coverage exists in the underlying lawsuit under Policy Number OUS009066697, and (b) Canopius has no duty to defend or indemnify Texas Metal Scrap Recyclers, LLC, Jamyky, LLC, Simco Solutions and Arthur Woods in the underlying lawsuit;

(3)    On Count III, a declaration and judgment that the alleged business conduct of Texas Metal Scrap Recyclers, LLC in the underlying lawsuit falls outside the scope of Policy Number OUS009066697's business description and classification, and that, therefore, (a) no coverage exists in the underlying lawsuit under Policy Number OUS009066697 pursuant to the Classification Limitation, and (b) Canopius has no duty to defend or indemnify Texas Metal Scrap Recyclers, LLC in the underlying lawsuit;

(4)    On Count IV, a declaration and judgment that the bodily injury made the basis of the underlying suit arises out of the use of an auto, and that, therefore, (a) no coverage exists in the underlying lawsuit under Policy Number OUS009066697 pursuant to the "Auto Exclusion", and (b) Canopius has no duty to defend or indemnify Texas Metal Scrap Recyclers, LLC in the underlying lawsuit;

(5)    On Count V, a declaration and judgment that Coverage A in Policy Number OUS009066697 does not provide coverage with respect to the bodily injury made the basis of the underlying lawsuit, and that, therefore, (a) no coverage exists in the underlying lawsuit under Policy Number OUS009066697's Coverage C pursuant to exclusion g, "Coverage A Exclusions", and (b) Canopius has no duty to defend or indemnify Texas Metal Scrap Recyclers, LLC in the underlying lawsuit;

(6)     Reasonable attorney fees;

(7)     Taxable costs of court; and

(8)     Such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

DONATO, MINX, BROWN POOL, P.C.

By: _____
   Robbie A. Moehlmann
   State Bar No. 24007691
   3200 Southwest Freeway, Ste. 2300
   Houston, Texas 77027
   Phone: (713) 877-1112
   Fax: (713) 877-1138
   rmoehlmann@donatominxbrown.com

**ATTORNEY FOR PLAINTIFF**

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CANOPIUS US INSURANCE, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. _____ |
| | § | |
| TEXAS METAL SCRAP RECYCLERS, LLC | § | |
| | § | |
| Defendant. | § | |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES, Plaintiff, Canopius US Insurance, Inc. ("Canopius"), and files this Original Complaint for Declaratory Judgment, and in support thereof would respectfully show the following:

## I.    INTRODUCTION

1.      Canopius brings this action seeking a declaratory judgment that it has no obligation to provide coverage under Policy Number OUS009066697 ("Policy") for any damages that allegedly occurred on the property of Technip USA, Inc. ("Technip") located at 8000 Global Drive, Sulphur, Louisiana, as a result of a personal injury to Leo Boudoin, Jr. ("Boudoin"). In particular, coverage does not exist under the Policy because (1) the named defendants do not qualify as insureds under the Policy; (2) the alleged business conduct of the insured, Texas Metal Scrap Recyclers, LLC ("TMSR"), falls outside of the Policy's business description and classification; and (3) the Policy does not provide coverage for bodily injury arising out of, caused by or contributed to by the use of an auto. As a result, coverage is precluded under the Policy, and Canopius owes no duty to defend or indemnify TMSR in the underlying lawsuit.

## II.      PARTIES

2.       Canopius US Insurance, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1450 East American Lane, Schaumburg, Illinois 60173.

3.       Texas Metal Scrap Recyclers, LLC claims to be a Texas limited liability company. Its principal place of business is located at 6318 Gessner Dr., Houston, Texas 77041 and may be served through its registered agent, James Craig Dudley, at the above address or any other place that he may be found. Service of process is requested at this time.

## III.      JURISDICTION AND VENUE

4.       The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and this is an action between citizens of different states. Thus, diversity jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1).

5.       Venue is proper under 28 U.S.C. § 1391(b)(1) in this judicial district because all Defendants reside in this judicial district and are residents of the State of Texas.

6.       This declaratory judgment action is properly before the Court pursuant to 28 U.S.C. § 2201(a) because it involves a policy issued in this judicial district, is otherwise within the Court's subject-matter jurisdiction and involves an actual, substantial case or controversy between the Parties.

### IV.    RELEVANT FACTS

**A.    The Underlying Lawsuit**

7.      On or about February 26, 2015, the underlying plaintiff, Boudoin, was working for Arthur Woods ("Woods") d/b/a Simco Solutions ("Simco") at a commercial facility owned by Technip. As alleged by Boudoin, Simco owned and operated a "commercial motor vehicle, license plate CDM-9296, with a crane attached to the bed of the truck." Boudoin's Original Petition, attached hereto as Exhibit "A", at ¶ 10. Boudoin was employed as a mechanic/burner, with his job duties being to maintain mechanical equipment and cut scrap metal. *See id.* at ¶ 8.

8.      At the time of the accident, Woods was operating the crane attached to the back of the truck to unload pipe. He allegedly picked up a heavy pipe section and was lowering it to the ground when it fell off the grapple hook attached to the crane. As a result, a 30 foot section of pipe lying on the ground was struck, causing same to move suddenly and strike Boudoin in his lower right leg. Boudoin allegedly sustained serious injuries and subsequently filed suit against Jamyky, LLC d/b/a Texas Metal Scrap Recyclers and Arthur Woods d/b/a Simco Solutions (the "underlying lawsuit"). The insured, TMSR, thereafter made a claim, received on July 15, 2015, for defense and indemnity under the Policy. *See* Notice of Occurrence, attached hereto as Exhibit "B".

**B.    Canopius' Insurance Policy and Coverage Position to Date**

9.      Policy Number OUS009066697 was issued in Texas to "Texas Metal Scrap Recyclers, LLC" with a policy period of June 30, 2014 to June 30, 2015. The Policy provided TMSR with Commercial General Liability Coverage, subject to Policy provisions.

10.     Blair & Company is a Third Party Administrator for Canopius. On August 18, 2015, Blair & Company sent a Denial of Coverage, attached hereto as Exhibit "C", to TMSR. The denial letter advised TMSR that the Policy would not provide it with defense or indemnity for the allegations in the underlying suit for three main reasons: (1) the defendants in the underlying lawsuit do not qualify as insureds under the Policy; (2) the alleged business conduct of TMSR falls outside the scope of the Policy's business description and classification; and (3) the Policy does not provide coverage for bodily injury arising out of, caused by or contributed to by the use of an auto.

**a.      The Defendants in the Underlying Lawsuit Are Not Insureds under the Policy.**

11.     The only entity listed in the Policy Declarations is "Texas Metal Scrap Recyclers, LLC". The Supplemental Declarations under the Policy's Form of Business further notes that TMSR is a limited liability company.

12.     The Policy provides, under Section II – Who Is An Insured, in relevant part, as follows:

**SECTION II – WHO IS AN INSURED**

**1.  If you are designated in the Declarations as:**

. . .

> **c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.**

. . .

**No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.**

4

13.     The above provision extends insured status to members of the limited liability company, but only with respect to the conduct of the business. Insured status is also extended to any manager of the limited liability company, but only with respect to their duties as managers.

14.     The Policy contains no endorsements modifying the name of TMSR or adding insureds to same. Moreover, TMSR did not list any other entities in its application. Rather, the application is in the name of "Texas Metal Scrap Recyclers, LLC." But as noted in the Policy, no person or organization is an insured with respect to conduct of any partnership, joint venture or limited liability company not listed as a Named Insured in the Declarations. Therefore, only Texas Metal Scrap Recyclers, LLC, its members and directors qualify as insureds under the Policy.

15.     In the underlying petition, Boudoin asserts that Texas Metal Scrap Recyclers is a d/b/a of Jamyky, LLC. Jamyky, LLC is pled to be a d/b/a and, accordingly, does not qualify as a member of Texas Metal Scrap Recyclers, LLC. Moreover, no filing has been made for Texas Metal Scrap Recyclers, LLC with the Texas Secretary of State. Without the necessary paper work to be a legally recognized LLC, TMSR can have no members. As such, Jamyky, LLC does not qualify as an insured under the aforementioned member provision. For the same reason, Jamyky, LLC likewise cannot be a manager of Texas Metal Scrap Recyclers, LLC. Jamyky does not qualify as an insured under the manager provision.  For these reasons, Jamyky, LLC is not an insured under the Policy and will have no coverage available to same.

16.     Similarly, Simco Solutions does not qualify as a member of Texas Metal Scrap Recyclers, LLC or as a manager of Texas Metal Scrap Recyclers, LLC. Therefore, Simco Solutions is also not an insured under the Policy.

17.     Arthur Woods likewise does not appear to be a member of Texas Metal Scrap Recyclers, LLC, nor does he appear to be a manager of same. Regardless, the underlying petition asserts Arthur Woods was operating as Simco Solutions and thus would not be working in the capacity of either member or manager of Texas Metal Scrap Recyclers, LLC during the events that allegedly caused the underlying injury. Therefore, Arthur Woods does not qualify as an insured under the Policy.

18.     Boudoin also asserts in the underlying petition that Simco Solutions and Arthur Woods were acting as agents of TMSR. However, agency does not rise to the level of membership or manager status in a limited liability company. As a result, these allegations do not trigger insured status for either Simco Solutions or Arthur Woods under the Policy.

19.     Lastly, paragraph 3 of Section II – Who Is An Insured regarding newly formed organizations is deleted via endorsement Exclusions – New Entities. Therefore, no argument can be made that either Jamyky, LLC or Simco Solutions is a newly formed organization of Texas Metal Scrap Recyclers, LLC. The only entity that is an insured under the Policy is Texas Metal Scrap Recyclers, LLC.

   **b.     The Alleged Business Conduct of TMSR Falls Outside the Scope of the Policy's Business Description and Classification.**

20.     The next applicable provision of the Policy is TMSR's classification, which is "Metal Scrap Dealers." The subject class code description is as follows:

   **This classification is applicable to both ferrous and non-ferrous recyclable scrap metals such as iron, steel, brass, copper and**

> **aluminum. The dealer sorts and grades various metals for resale to others. Operations may involve shearing, cutting or reduction of metals to ingot form through the use of on site furnaces.**
>
> **Metal scrap dealers usually purchase metals from junk dealers or contractors engaged in demolition of existing structures or metal buildings. Recyclable metals may be bundled or baled for shipment to blast furnace operators, foundries or steel mills for recovery. Delivery can be made by common carrier or employee drivers.**

This class description does not reference the actual collection and cutting of metal from the facility of another. The description also does not reference the use of mobile cranes to move the subject material. On the contrary, the description states that "[m]etal scrap dealers usually purchase metal from junk dealers or contractors engaged in demolition of existing structures or metal buildings." *Id*. The underlying defendants have gone beyond the contemplated role of a metal scrap dealer and are operating outside of the class description.

21.     The description also does not say that the insured, with a metal scrap dealer classification, will be actually performing the demolition of existing structures or metal material at another's facility. The underlying petition, however, states Boudoin was employed as a mechanic/burner whose job it was to maintain mechanical equipment and cut scrap metal. The petition also states Boudoin was working at the Technip facility and that the operation in which he was injured involved moving several heavy pieces of pipe by crane. The pled activities are simply not associated with the activities contemplated in the class code description for metal scrap dealers. Furthermore, Boudoin alleges the failure of Simco, as an agent of TMSR, to perform the subject operations not described in the class are what caused or contributed to his injuries in the underlying suit.

7

22.     As a result of Boudoin's allegations in the underlying petition not falling within the class of business for which TMSR is described in the Policy, the Policy's Classification Limitation is triggered. The Classification Limitation, which is found in the Combination General Liability Endorsement, reads as follows:

(A)     **Classification Limitation**

**This insurance applies only to locations and operations that are described under "business description" and/or "classification" on the Declaration page or Extension of Declarations page of this policy. If any operation(s) and/or location(s) are not so described, they are not covered hereunder.**

23.     The limitation provides the Policy will apply only to operations described under the "business description" and/or classified on the Declaration page or Extension of Declarations page of the Policy.

24.     The provision also states that if any operations are not so described, they are not covered by the Policy. The "business description" can be found on the Supplemental Declarations page under "Description of Business" and reads as follows: "METAL SCRAP DEALERS." Further, on the Extension of Supplemental Declarations of the Policy, the class description is likewise "METAL SCRAP DEALERS." Therefore, TMSR's business is described as metal scrap dealers, and TMSR is classified as a metal scrap dealer. As noted above, the conduct described in the underlying petition does not fall under either the description or the classification of metal scrap dealers. Therefore, the operations asserted in the underlying petition are not "described" in the Policy, and the Policy will thus not cover the bodily injury that resulted from same. Canopius has no duty to defend and no duty to indemnify.

c.     **The Policy Does Not Provide Coverage for Bodily Injury Arising out of, Caused by, or Contributed to by the Use of an Auto.**

8

25.     The next applicable provision of the Policy is the Aircraft, Auto or Water Craft Exclusion ("auto exclusion"). The auto exclusion, found in the Commercial General Liability Coverage Form, is modified by the Combination General Liability Endorsement and provides as follows:

**(E)     Aircraft, Auto or Watercraft**

**The first paragraph of SECTION I COVERAGES, 2. Exclusions, g. Aircraft, Auto or Watercraft of the Commercial General Liability Coverage Form is deleted and replaced by the following and applies throughout this policy:**

**This insurance does not apply to: g. "bodily injury" or "property damage" arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any aircraft, "auto", watercraft, snow mobile, all terrain vehicle (ATV) or motorcycle. Use includes operation and "loading and unloading."**

**This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or water-craft that is owned or operated by or rented or loaned to any insured.**

**This exclusion does not apply to:**

**. . .**

**(5)     "Bodily injury" or "property damage" arising out of:**

**(a)     The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or**

> **(b)** **the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment."**

26.     The auto exclusion applies to negate bodily injury arising out of, caused by

or contributed to by the use of an auto, including loading and unloading operations.

27.     The Policy defines "auto" as follows:

> **2.** **"Auto" means:**
>
> > **a.** **A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or**
> >
> > **b.** **Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.**
>
> **However, "auto" does not include "mobile equipment."**

28.     The Policy defines "mobile equipment" as follows:

> **12.** **"Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:**
>
> **. . .**
>
> > **d.** **Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:**
> >
> > > **(1)** **Power cranes, shovels, loaders, diggers or drills; or**
> > >
> > > **(2)** **Road construction or resurfacing equipment such as graders, scrapers or rollers;**
>
> **. . .**
>
> **However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.**

**Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."**

29.     The auto exclusion applies if the Simco truck used in the subject incident of the underlying suit qualifies as an "auto" and not as "mobile equipment." Moreover, the definition of "auto" is triggered to the extent the Simco truck is subject to compulsory or financial responsibility laws in the State of Texas.

30.     At first glance, the definition of "mobile equipment" appears to apply to the Simco truck at issue. In particular, the definition of "mobile equipment" provides that a vehicle with a permanently mounted power crane may qualify as mobile equipment to the extent the vehicle is maintained primarily to provide mobility to that crane. However, given that the Simco truck is driven on public highways and is used for purposes other than as mobility for the subject crane, this provision does not apply.

31.     Furthermore, the exception to the "mobile equipment" definition noted above is also triggered. This exception provides that "mobile equipment" does not include any vehicle subject to compulsory or financial responsibility laws, and the Simco truck at issue is indeed subject to those laws in the State of Texas, where the truck is principally garaged. The truck's records confirm that it is licensed in Texas and required to have automobile insurance. Therefore, the Simco truck is considered an "auto" rather than "mobile equipment."

32.     Because the Simco truck is an "auto" under the Policy, the next consideration is the application of the auto exclusion. The exclusion states the Policy will not apply to a bodily injury arising out of the use of an auto, specifically including loading and unloading.

33.     In his original petition, Boudoin states he was injured while Simco, allegedly acting as the agent of TMSR, was unloading heavy pipe from the Simco truck. Therefore, the underlying petition asserts he sustained a bodily injury arising out of the use of an auto. As a result, the auto exclusion is triggered, and the Policy does not apply.

34.     Additionally, the underlying petition asserts six acts of negligence, all of which involve the failure of Simco, allegedly acting as the agent of TMSR, to properly operate the auto. Again, the auto exclusion is triggered by these allegations, and the Policy therefore does not apply.

**d.      Coverage Is Also Not Available Under Coverage C – Medical Payments, Which Does Not Apply to Bodily Injury Excluded Under Coverage A.**

35.     Finally, the Policy provides, under Coverage C – Medical Payments, for payment of medical expenses up to a $5,000.00 limit. However, Coverage C also contains exclusion g., "Coverage A Exclusions," which states Coverage C will not apply to any bodily injury excluded under Coverage A.

36.     As stated above, the auto exclusion, found in Coverage A negates Boudoin's bodily injury in the underlying suit from coverage. Therefore, the bodily injury is also excluded under Coverage C via exclusion g. Similarly, the Classification Limitation negates the application of the Policy to Boudoin's bodily injury and, therefore, Coverage C cannot apply.

37.     For these reasons, (1) the Policy does not provide coverage to TMSR in the underlying suit, and (2) Canopius has no duty to defend or to indemnify TMSR in the underlying suit.

**V.      COUNT I – DECLARATORY JUDGMENT**

**Texas Law Is Controlling on the Issues of Coverage Involved in This Action.**

38.     Canopius incorporates each and every allegation in paragraphs 1 through 37 of this Complaint.

39.     The Policy was negotiated and issued in Texas to an insured, TMSR, with its principal place of business in Houston, Texas. This contract for insurance is thus a Texas contract and should therefore be interpreted according to the laws of the State of Texas.   Accordingly, Canopius seeks a declaration from the Court that Texas law is controlling on the issues of coverage made the basis of this action.

## VI.     COUNT II – DECLARATORY JUDGMENT

**The Defendants in the Underlying Lawsuit Are Not Insureds under the Policy.**

40.     Canopius incorporates each and every allegation in paragraphs 1 through 39 of this Complaint.

41.     The only entity listed in the Policy Declarations is "Texas Metal Scrap Recyclers, LLC," a limited liability company. The Policy also extends insured status to members of TMSR with respect to the conduct of the business and to managers of TMSR with respect to their duties as managers. Because the Policy does not include any other person or organization as a Named Insured in the Declarations, only Texas Metal Scrap Recyclers, LLC, its members and directors may qualify as insureds under the Policy. However, the defendants in the underlying lawsuit are neither members nor managers of Texas Metal Scrap Recyclers, LLC, nor were they conducting TMSR's business or acting with respect to duties of a TMSR manager. Furthermore, the allegations that the defendants were acting as agents of TMSR does not rise to the level of member or manager of a limited liability company and also does not confer insured status. Finally, none of the defendants in the underlying lawsuit can be said to be newly

formed organizations of TMSR because paragraph 3 of Section II – Who Is An Insured regarding newly formed organizations has been deleted via an endorsement. Accordingly, Canopius seeks a declaration from the Court that the defendants in the underlying lawsuit are not insureds under the Policy.

## VII.    COUNT III – DECLARATORY JUDGMENT

**The Alleged Business Conduct of TMSR Falls Outside the Scope of the Policy's Business Description and Classification.**

42.    Canopius incorporates each and every allegation in paragraphs 1 through 41 of this Complaint.

43.    The Policy includes a job description and classification of "metal scrap dealer" for TMSR. However, the alleged activities in the underlying petition extend beyond the scope of this contemplated description and classification. In particular, the actual collection and cutting of metal at the facilities of others, the use of mobile cranes to move materials, and the demolition of existing structures or metal material are not activities contemplated within the defined term of "metal scrap dealer." As a result, the Policy's Classification Limitation is applicable and coverage does not exist for the underlying lawsuit. Accordingly, Canopius seeks a declaration from the Court that the alleged operations of TMSR fall outside the scope of the Policy's business description and classification, thereby triggering the Policy's Classification Limitation that states the Policy will not cover TMSR's subject operations.

## VIII.    COUNT IV – DECLARATORY JUDGMENT

**The Policy Does Not Provide Coverage for Bodily Injury Arising out of, Caused by, or Contributed to by the Use of an Auto**

44.    Canopius incorporates each and every allegation in paragraphs 1 through 43 of this Complaint.

45.     The accident made the basis of the underlying lawsuit arises out of a personal injury that occurred after a heavy pipe section fell to the ground from a grapple hook attached to a crane. This crane, however, was mounted upon the bed of a truck and was being used at the time of the incident to pick up the heavy pipe section that ultimately caused Boudoin, the underlying plaintiff, to be struck. In other words, the underlying lawsuit arises out of a bodily injury that arose out of the use of an "auto" (defined to include any attached machinery or equipment). Indeed the subject motor vehicle has a registered Texas license plate and is required to have automobile insurance. As such, the vehicle constitutes an "auto" rather than "mobile equipment," and the underlying allegations thus trigger the Policy's auto exclusion, which specifically excludes coverage under the Policy for bodily injury arising out of the use of an auto. Accordingly, Canopius seeks a declaration from the Court that, pursuant to the Policy's auto exclusion, there is no coverage with respect to the bodily injury made the basis of the underlying suit.

## IX.     COUNT V – DECLARATORY JUDGMENT

**Coverage Is Also Not Available Under Coverage C – Medical Payments, Which Does Not Apply to Bodily Injury Excluded Under Coverage A**

46.     Canopius incorporates each and every allegation in paragraphs 1 through 45 of this Complaint.

47.     For the reasons set forth above, particularly in Counts III and IV, there is no coverage for the underlying lawsuit under Coverage A of the Policy. The Policy also provides Coverage C – Medical Payments, which affords the payment of medical expenses up to a $5,000.00 limit. However, because coverage does not exist under Coverage A, exclusion g of Coverage C is triggered. In particular, exclusion g

15

("Coverage A Exclusions") states that Coverage C does not apply to any bodily injury excluded under Coverage A. Accordingly, Canopius seeks a declaration from the Court that, pursuant to exclusion g. within Coverage C, the Policy does not provide coverage for the underlying suit.

## IX.   PRAYER

WHEREFORE, Plaintiff, Canopius US Insurance, Inc., seeks the following relief against Texas Metal Scrap Recyclers, LLC:

(1)     On Count I, a declaration and judgment that Texas law is controlling on the issues of coverage made the basis of this action.

(2)     On Count II, a declaration and judgment that the defendants in the underlying lawsuit are not insureds under Policy Number OUS009066697, and that, therefore, (a) no coverage exists in the underlying lawsuit under Policy Number OUS009066697, and (b) Canopius has no duty to defend or indemnify Texas Metal Scrap Recyclers, LLC, Jamyky, LLC, Simco Solutions and Arthur Woods in the underlying lawsuit;

(3)     On Count III, a declaration and judgment that the alleged business conduct of Texas Metal Scrap Recyclers, LLC in the underlying lawsuit falls outside the scope of Policy Number OUS009066697's business description and classification, and that, therefore, (a) no coverage exists in the underlying lawsuit under Policy Number OUS009066697 pursuant to the Classification Limitation, and (b) Canopius has no duty to defend or indemnify Texas Metal Scrap Recyclers, LLC in the underlying lawsuit;

(4)     On Count IV, a declaration and judgment that the bodily injury made the basis of the underlying suit arises out of the use of an auto, and that, therefore, (a) no coverage exists in the underlying lawsuit under Policy Number OUS009066697 pursuant to the "Auto Exclusion", and (b) Canopius has no duty to defend or indemnify Texas Metal Scrap Recyclers, LLC in the underlying lawsuit;

(5)     On Count V, a declaration and judgment that Coverage A in Policy Number OUS009066697 does not provide coverage with respect to the bodily injury made the basis of the underlying lawsuit, and that, therefore, (a) no coverage exists in the underlying lawsuit under Policy Number OUS009066697's Coverage C pursuant to exclusion g, "Coverage A Exclusions", and (b) Canopius has no duty to defend or indemnify Texas Metal Scrap Recyclers, LLC in the underlying lawsuit;

(6)    Reasonable attorney fees;

(7)    Taxable costs of court; and

(8)    Such other and further relief as the Court deems just and equitable.


Respectfully Submitted,

DONATO, MINX, BROWN POOL, P.C.


By: _____
        Robbie A. Moehlmann
        State Bar No. 24007691
        3200 Southwest Freeway, Ste. 2300
        Houston, Texas 77027
        Phone: (713) 877-1112
        Fax: (713) 877-1138
        rmoehlmann@donatominxbrown.com

**ATTORNEY FOR PLAINTIFF**

17